United States District Court Western District of Wisconsin

JAMES ALFRED SMITH JR. #270032,
Jonathan Winn #675824, Kamaal Allen #485936, Martinez M. Edwards #642729, Devonte Mitchell #585617, Romele Wallace #297112, and Equantez Sloan #428387,

Plaintiffs

V.

Secretary. Kevin A. Carr., State of Wisconsin Department of Corrections,

Respondent

23 CV 261 WMC

2023 APR 26 A 10:02
CLERK OF COURT
U.S. DISTRICT COURT

1) Now comes the Plaintiffs, Pro Se, James Alfred Smith Jr., and Jonathan Winn, Martinez M. Edwards, Devonte Mitchell, Romele Wallace, and Equantez Sloan, requesting this Court grant a Class Action in the above captioned case against the Respondent. The basis for the district court's jurisdiction "whether this is a case that depends on federal law-i.e, does the Americans with Disabilities Act protect criminal offenders in state prosecutions under the Truth in Sentencing Laws to raise a federal question that is authorized for this Court to decide pursuant 42 U.S.C.A § 12132 Discrimination and the Prohibitation against retaliation and coercion, pursuant 42 U.S.C.A § 12203, in which the plaintiff was subjected to discrimination by the Respondent not making reasonable accommodations to the known physical limitions and mental health impairment. The Plaintiff is qualified individuals with disabilities, that were denied applications for accommodation by the Respondent who retaliated with the use of coercion, because he petitioned this court in Milwaukee County Circuit Court case No. 1994 CF 940760, in a Writ of Habeas Corpus pursuant § 2254, presenting a similar Federal question: "Does the Americans with Disabilities Act protect criminal Defendants in state prosecutions? Consequently that case was appealed to the United States Supreme Court, but remanded back to the United States Court of Appeals for the Seventh Circuit. That Court appointed counsel and eventually overturned the Plaintiffs conviction on a Sixth Amendment violation to his right to counsel, Holding that the State Public Defender had declined to appoint additional counsel by their policy but the court had inherent power to appoint counsel when the State Public Defender declines to act.

2). The Plaintiffs were denied equal protection and due process in revocation of extended supervision procedures obtaining discovery in his defense. A substantinted assertion of privilege in substantial justification for failure to comply with an order to provide or permit discovery. See Burnett v. Alt, 224 Wis. 2d 518, 589 N.W. 2d 21 (1999), 96-3356. With the appropriate showing the circuit court may determine that a party's action, or inaction provides adequate cause for sanctions against the party but does not the court to depense with any burden of proof that must be satisfied prior to entering judgment order

Legal Purposes Only. MSDF Legal Loan DOC # 370032

1

see Evelyn C.R. v. Tykila S. 2001 WI 110, 246 Wis. 2d 1, 629 N.W. 2d 768, 00-1739.

The failure to act described in this section may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by s. 804.01(3).

3) On or about 2/27/2023 the Plaintiff was served with Department of Corrections - Division of Community Correction DOC-0414 Notice of Violation, Recommended Action, Statement of Hearing Rights and Receipt - Wisconsin Administrative Code Chapters DOC 328 Wisconsin Statutes Chapter 973 and 302 form Offender Information: Offender Name: James Smith DOC #270032 Agent Name: Lyndsy Jaeger Agent #31404, Court Case # 13CF4501-001 #8 counts for revocation is recommended - Department of Corrections - Division of Community Corrections, DOC-0414 Waivers and Custody Decision (DOC-0414A) - Department of Corrections Division of Corrections, DOC-0414 Outline of Revocation Procedures (DOC-0414B). However, all the Plaintiffs in the above captioned case received Department of Corrections, Division of Community Corrections, Division of Community Corrections, Division of Juvenile Corrections DOC-429, Revocation Hearing Request Date of Preliminary Hearing: 3/17/2023, Status to be Revoked Extended Supervision. The Plaintiff Smith received a letter from Sarah J. Watson, Preliminary Hearing Magistrate "This letter is to summarize the events of your preliminary hearing conducted on 03/03/23. At this time, the hearing will be rescheduled based on your request to have an attorney present. Agent Jaeger will follow up with the Public Defender's office and make arrangements for the hearing to be rescheduled." On March 23, 2023 the Plaintiff Smith received a letter dated 3/23/23 stating in part: Please be advised that your case has been scheduled to determine whether you have the rules or rather scheduled for a status conference between the agent attorney and administrative law judge. The status conference with be initiated by the administrative law judge at or before the following time: Status Conference Date March 24, 2023 by Mayumi M. Ishii, Administrative Law Judge, Division of Hearings and Appeals, Re: James H. Smith, Case No. 2013CF4501-Request for a Competency Determination: "This is a request for a determination of competency pursuant to the Wisconsin Supreme Court decision in State ex rel Vanderbrooke v. Endicott, 210 Wis. 2d 502 (1997). The defendant, James H Smith was convicted in Case No. 2013CF4501 on June 18, 2014 and sentenced to two years of initial confinement and five years of extended supervision. The Department of Corrections has requested that extended supervision be revoked. Prior to the hearing being scheduled, Attorney Melissa Nepomiachi raised competency stating that when she met with Mr. Smith, he appeared confused and disoriented, and that he did not

2

appear to understand the revocation procedures. As such, she believed he was not capable of making reasoned decisions, or assisting in his defense. Agent Lyndsey Jaeger indicated that Mr. Smith does have a history of mental health issues and is categorized as MH-1, meaning he can function day to day, but has mild to moderate mental health issues. Agent Jaeger further stated that Mr. Smith has a history of not being cooperative with healthcare provid- providers, making it difficult to asses him. Agent Jaeger did not express any opinions about Mr. Smith's competency, but noted that Mr. Smith was previously found competent the last time the Department revoked his supervision. Because of these facts, I have concluded that it is appro- priate for the court to make a competency determina- tion as required by the Vanderbeke decision. The defendant is currently confined at the Secure Detention Ficility, and is repre- sented by Attorney Melissa Nepomiachi, 819 N. 6th Street- 9th floor, Milwaukee WI, 53203-1606, (414) 227-4917. His proba- tion agent is Lyndsy Jaeger, 6645 West Mill Road, Milwoukee WI, 53218 (414) 429-5269. The Department has not yet submitted a packet, but I have included the e-mail sting containing Attorney Nepomiachi's and Agent Jaegers impressions. As a result of my determination that there is reason to ques- tion the defendants competency. I have suspended the revocation proceedings pending the sentencing courts deter- mination that there is reason to question the defendants competency. The revocation proceedings will not reconven- ed until I receive a copy of those findings and conclusion in this matter."

In 1932 Lawyers won a stunning victory when they appeal- ed the Scottsboro verdict to the United States Supreme Court. See Powell v. Alabama, 287 U.S. 45 (1932). The Court ruled defense counsel had been so inadequate that the defendants had been denied the Fourteenth Amendment right to due process of law. a fair trial. The Court set aside the guilty verdicts, granting the defendants the right to a new trial. From cold blooded illegal lynching. In an astonishing turn of events, black defendants in rape cases involving white women outraged Southern whites on the testimony of Victoria Price's uncorroborate, unreliable improbable, and overwhelmingly contradicted by other evidence. Judge Hoeton concluded the alleged rapes did not take place. History sacred and profane and teaches us women for selfish reasons make false accysations of rape. Again the United States Supreme Court agreed to review Scotts- boro conviction, argued that blacks had been deliberately excluded from jury service on the basis of race was unconstitutional. Moreover, Plaintiff Smith was reve

vocated due to ineffective assistance of counsel. After informing revocation counsel of a traumatic brain injury due to a school bus accident in which I was struck down and severly broke my left leg and diagnosed with amnensia. However, the Plaintiff appointed state public defender completely in sympathy with the prosecution refused to subpoena my medical records from Froedtort Hospital in Milwaukee or call wit witness in his behalf. Displaying unconcealed hostility toward Smith. In Norris v. Alabama the United States Supreme Court, 294 U.S. 587 (1935) agreed citing clear and factual evidence of race discrimination. The fact that the Supreme Court of the United States reversed the verdicts of the first trials because defendants had been denied adequate legal counsel underlines the point.

 Corruption, inefficiency, and oppression, as sinister unprincipled, secretive, devious, manipulative authoritarian and fundamentally insincere, Jim Crow Laws. Rarely has there been a clearer example of unprovoked aggression and ruthless colonialism of black offenders who are barred from meny trads, and industries, excluded from freedom, white-collar jobs, and banned from entire sections of the urbon economy. Similarly, legal challenges to Jim Crow Laws in the United States Supreme Court, the Court granted an injunction against a theater that refuse to seat blacks. In 1915 in Gwing v. United States, the Supreme Court knocked out Oklahoma's grandfather clause which had exempted prospective voters from a litteracy test if they were "lineal decendents" of people how had been qualified to vote on January 1, 1866. Only whites of coues could get through the loophole. It was the first tiim the Court struck down a disenfranchising device. Two years later, in Buchanan v. Warley, the Supreme Court ruled that an ordinance passed by the City of Louisville, Kentucky, that established black and white zones of residence was unconstitutional. The Supreme Court eliminated the grandfather clause, whites only use other means to keep blacks disinfranchised. Racism became a capitalist device to divide white offenders from the majority of black offenders, but also adopted unwritten policies that were specifically designed to oppress black offenders through black codes such as DOC-429 by concealing

4

and watering down their programming policies in conspiratial methods, authoritarian style and exacting discipline in the plot to put the best spin on the denial of court ordered programming. The letter head "Department of Corrections-Division of Community Corrections-Division of Juvenile Corrections-(DOC-429). Request for a revocation hearing was highly revelent in the quest to lay a factual foundation to prove intent. This unusual procedure in the Division of Adult Institutions under DOC-0414, etched the entire sequence of events in which procedure is illegal in the Wisconsin Division of Hearings and Appeals

There were improprieties in the way documents had been funneled from Agent Lyndsy E. Jaeger, within the Division of Community Corrections to the Division of Hearings and Appeals in the pilfering of documents reflected a kind of talisman invoked by officials at widely levels of state government correctional service to justify a wide range of apparently illegal activities. No government office, not even the highest office in the land carries with it the right to ignore the laws command any more then the orders of a superior can be use by government officers to justify illegal behavior. The DOC 429 code for the Division of Juvenile Correction were confussing, and in conflict with the facts and with itself bordering on deception in the official (DOC) Division of Hearings and Appeals Revocation Hearing Request Form on entry of the file (Packet) was ambiguous publicized sham irregular and contrary to law These tyes of black codes placed under strick white supervision used to provent blacks from testifying in court against whites. They limited the areas in which blacks could buy or rent property, and they required blacks to pay license fees in order to set up businesses in the south

Codified correction practices increasingly has become the organized principle of desfranchisment policy that has reached epidemic proportions. In criminal cases, recognizing and protecting the rights of the accused provided in the Constitution and then ensur ensuring that victims receive justice and the community is kept safe once guilt has been determined, A offender is entitled to a Final Revocation Hearing, which he or she may waive. The Hearing would be held before an Administrative Law Judge that would determine based on evidence presented, whether revocation is appropriate. At the final revocation hearing, a offender has a right to be present at the hearing, to present witnesses, to question witnesses, to receive a written decision, stating the reasons for it based on the evidence presented, to deny the allegations, to present documentary evidence, to an attorney, to appeal the decision to the Administrator of the Division of Hearings and Appeals. However, what is required by due process for a offender, is a formal hearing, structured to assure that finding

of a violation will be based on verified facts, and that exercise of discretion will be informed by accurate knowledge of offender's behavior. Due process requires (a) written notice of claim offender violated; (b) disclosure of evidence against him (c) opportunity to be heard in person, and to present witnesses and documentary evidence; (d) right to confront and cross examine adverse witnesses unless hearing officer specifically finds good cause for not allowing confrontation (e) nuetral and detached hearing body such as triditional parole board; (f) written statements by fact-finder as to the evidence relied on and reason for revocation of supervision.

Disenfranchisement abolished the triditional parole board, and reduced offenders to the old convict leasing system with court ordered obligations, and payments for supervision fees. and subjected them to revocation for failure to meet court ordered obligations or supervision fees due to their proverty or disability. Moreover, the disenfranchisement of court ordered rehabilitational programming has prejudiced plaintiffs ability to avail themselves. There is a need for sustained progress and improvement for success, but not providing court ordered proggraming at this junction has blocked a significant step forward. Class Action litigants expressed frustration and confusion with the struggles of essentail programming and the revocation procedure pursuant to the Division of Juvenile Corrections (DOC-429) filed in the (DOC's) Division of Hearings and Appeals when unable to decern from the revocation hearing request the relevent matter that occurred in the allegations.

28 U.S.C. § 1915 (e)(1) authorizes this court to request an attorney to represent any person unable to afford counsel. The Plaintiff Smith who is weitting this Class Action has been subjected to an competency hearing in retaliation for objecting to jurisdiction of the Administitive hearing as unconstitutional under the 6th Amendment to the Wisconsin and United States constitution.

Therefore, the Plaintiffs are requesting this court to request that class action caunsel be appointed to represent them because they cannot afford counsel and are incompetent to proceed in this matter representing themselves. Requesting accommod by this court pursuant 42 U.S.C.A. § 12132 Discrimination

Under penalty of perjury I declare that the foregoing is true and correct Dated this 22nd day of April 2023

Very Truly
J. Smith        Dodroto Mitchell
Jonathan Wynn   Romell Wallace
Kemard Allen    Eqevawles Dean
Mertin...

6